**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| TAMMY GREENFIELD, Individually and for Others Similarly Situated,<br>Plaintiff,<br><br>v.<br><br>ABCM CORPORATION,<br>Defendant. | Case No. 3:23-CV-3006-MAR<br><br>FLSA Collective Action<br>Rules 23 Class Action<br><br>Jury Trial Demanded |

# MEMORANDUM OF LAW IN SUPPORT OF CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE


**Michael A. Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 24078444
**Olivia R. Beale**
TX Bar No. 21422166
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
obeale@mybackwages.com

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Mark D. Sherinian**
AT0007173
**Melissa C. Hasso**
AT0009833
**Emily E. Wilson**
AT0013860
**SHERINIAN & HASSO LAW FIRM**
111 E. Grand Ave., Suite 212
Des Moines, IA 50309
Tel: (515) 224-2079
Fax: (515) 224-2321
sherinianlaw@msn.com
mhasso@sherinianlaw.com
ewilson@sherinianlaw.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**

## TABLE OF CONTENTS


TABLE OF CONTENTS .....i

TABLE OF AUTHORITIES .....ii

TABLE OF EXHIBITS .....iv

1. Introduction. .....1

2. Relevant Facts. .....1

3. Conditional certification should be granted and notice should be authorized because the class is "similarly situated." .....6

   A. Purpose and Benefits of Conditional Certification .....6

   B. Legal Standard. .....7

   C. A class should be conditionally certified when they are subject to the same pay practice. .....8

   D. The Putative Class satisfies the lenient standard required to issue notice .....9

4. Plaintiffs' Notice Documents and Notice Methods Are Appropriate. .....10

   A. ABCM should be required to produce the names, addresses, e-mail addresses, and phone numbers for the notice process. .....11

   B. The Court should authorize notice by e-mail. .....11

   C. The Court should authorize a reminder notice. .....12

   D. The Court should authorize phone calls to Putative Class Members whose notice is returned undeliverable. .....12

5. Conclusion .....13

**TABLE OF AUTHORITIES**

Page(s)

Cases


*Bouaphakeo v. Tyson Foods, Inc.*,
564 F. Supp. 2d 870 (N.D. Iowa 2008) ........ 6, 7

*Cervantes v. CRST Int'l, Inc.*,
No. 20-CV-75-CJW-KEM, 2021 WL 7185079 (N.D. Iowa Jan. 25, 2021) ........ 10

*Chin v. Tile Shop, LLC*,
57 F. Supp. 3d 1075 (D. Minn. 2014) ........ 8

*Croft v. Protomotive, Inc.*,
No. 3:12-CV-03102, 2013 WL 1976115 (W.D. Ark. May 13, 2013) ........ 8

*Dyson v. Stuart Petroleum Testers, Inc.*,
308 F.R.D. 510 (W.D. Tex. 2015) ........ 12

*Enger v. Thomas L. Cardella & Assocs., Inc.*,
No. 20-CV-78-CJW-KEM, 2021 WL 5035045 (N.D. Iowa Jan. 26, 2021) ........ 11

*Ferguson v. Exide Techs.*,
No. C18-2044-LTS, 2019 WL 1493711 (N.D. Iowa Jan. 31, 2019) ........ 6, 7

*Friedly v. Union Bank & Tr. Co.*,
No. 4:21CV3105, 2021 WL 5773680 (D. Neb. Nov. 19, 2021) ........ 11

*Harrison v. Hog Taxi, LLC*,
No. 5:19-CV-05025, 2019 WL 4280328 (W.D. Ark. Sept. 10, 2019) ........ 11

*Hoffman-LaRoche, Inc. v. Sperling*,
493 U.S. 165 (1989) ........ 6, 10

*Hussein v. Cap. Bldg. Servs. Grp., Inc.*,
152 F. Supp. 3d 1182 (D. Minn. 2015) ........ 11

*Jaso v. Bulldog Connection Specialists LLC*,
No. 2:15-CV-269, 2015 WL 11144603 (S.D. Tex. Oct. 15, 2015) ........ 11, 12

*Kautsch v. Premier Commc'ns*,
504 F. Supp. 2d 685 (W.D. Mo. 2007) ........ 7

*Kilmon v. Saulsbury Industries, Inc.*,
No. 7:17-cv-00099, 2017 WL 7052328 ........ 8

*Klapatch v. BHI Energy I Power Servs., Inc.*,
No. 1:18-cv-11581, 2019 WL 859044, at *1 (D. Mass. Feb. 22, 2019) ........ 7

*Mickles v. Country Club Inc.*,
887 F.3d 1270 (11th Cir. 2018) ........ 1

*Middleton v. Hempstead Cnty., Arkansas*,
No. 4:18-CV-4112, 2019 WL 3948106 (W.D. Ark. Aug. 21, 2019) ........ 10

*Nobles v. State Farm Mut. Auto. Ins. Co.*,
No. 2:10-CV-04175-NKL, 2011 WL 5563444 (W.D. Mo. Nov. 15, 2011) ........ 10

*Norceide v. Cambridge Health,*
*All.*, 814 F. Supp. 2d 17 (D. Mass. 2011) ........ 8

*Prescott v. Prudential Ins. Co.*,
729 F. Supp. 2d 357 (D. Me. 2010) ........ 8

*Realite v. Ark Restaurants Corp.*,
7 F.Supp.2d 303 (S.D. N.Y. 1998) .......... 7
*Rhodes v. Truman Med. Ctr., Inc.*,
No. 4:13-CV-00990-NKL, 2014 WL 4722285 (W.D. Mo. Sept. 23, 2014) .......... 12
*Tegtmeier v. PJ Iowa*, L.C.,
208 F. Supp. 3d 1012 (S.D. Iowa 2016) .......... 7

Statutes

29 U.S.C. § 216(b) .......... 6

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---|---|
| 1 | ABCM's Handbook |
| 2 | Declaration of Tammy Greenfield |
| 3 | Declaration of Kathleen Bruns |
| 4 | Declaration of Kelley Gravel |
| 5 | Declaration of Tiffany Hale |
| 6 | Declaration of Jennifer Schuttler |
| 7 | Declaration of Jordan Tipps |
| 8 | Declaration of Marcia Clubb |
| 9 | Declaration of Angel Nicholson |
| 10 | Defendant's Production |
| 11 | Kathleen Bruns' W-2s |
| 12 | Notice and Consent Forms and Proposed Scripts |

## 1. Introduction.

Plaintiffs[1] allege ABCM violated the FLSA by failing to pay them and the Putative Class Members for all hours worked, including overtime, by uniformly subjecting them to a policy automatically deducting 30 minutes for "meal periods" regardless of whether they worked during that time. Plaintiffs request conditional certification of, and notice be sent to, the following class:

> **All hourly, non-exempt workers who worked for, on or behalf of, ABCM, at any ABCM facility, and who received an automatic meal period deduction at any time during the past 3 years ("Putative Class Members").**

The evidence provided is more than sufficient to satisfy Plaintiffs' lenient burden for conditional certification. The Court should grant Plaintiffs' motion and authorize them to send notice to the Putative Class Members to inform them of their right to opt in and participate in this action.

## 2. Relevant Facts.

ABCM describes itself as a leader in long term care.[2] It operates assisted living and long-term care facilities providing healthcare services to patients throughout the state of Iowa.[3] ABCM's locations span across Iowa.[4] "ABCM owns and operates 29 Skilled Nursing & Long-Term Care Centers, 22 Independent & Assisted Livings, and numerous Outpatient Therapy Clinics throughout Iowa, with specialized services varying by location."[5] To provide these services, ABCM employs more

---

[1] All references to "Plaintiffs" include both Tammy Greenfield and Kathleen Bruns. Greenfield filed this collective action to recover overtime wages owed to her and other similarly situated ABCM employees. On June 15, 2023, ABCM moved for summary judgment alleging Greenfield's claims are barred by the statute of limitations. Doc. 30. Bruns joined this case as an opt-in plaintiff one day after it was filed. Doc. 2. To ensure Bruns, the 21 other ABCM employees who have already joined this lawsuit, and the rest of the class can continue to pursue their claims regardless of the outcome of ABCM's motion for summary judgment targeting Greenfield, Greenfield requested leave to amend her complaint to add Bruns as a named Plaintiff. Doc. 31. What's more, "[t]he plain language of § 216(b) supports that those who opt in [like Bruns in this case] become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification, is required." *Mickles v. Country Club Inc.,* 887 F.3d 1270, 1278 (11th Cir. 2018). Thus, Bruns is already a party plaintiff.

[2] https://www.linkedin.com/company/abcm-corporation (last visited June 21, 2023).

[3] https://www.abcmcorp.com (last visited June 21, 2023).

[4] https://www.abcmcorp.com/locations (last visited June 21, 2023).

[5] https://www.linkedin.com/company/abcm-corporation (last visited June 21, 2023).

than 3,000 employees, including the Putative Class Members.[6] ABCM says it is one of the largest employers in Iowa. Ex. 1, ABCM's Handbook, at 3.

Plaintiffs and the Putative Class Members are similarly situated because they all: (1) were employed by ABCM; (2) were paid on an hourly basis; (3) were classified as non-exempt; (4) were required to follow ABCM's policies and procedures; (5) were subject to an automatic meal break deduction each shift; (6) were not paid for all hours worked; (7) regularly worked more than 40 hours per week; and (8) subsequently were not paid for overtime hours worked at a premium rate. The attached declarations confirm the uniformity of ABCM's policies. *See* Ex. 2-9. Moreover, the specific policy that forms the basis of the claims in this lawsuit—ABCM's auto-deduct policy—clearly applies to "all personnel who work at least a 5-hour shift." Ex. 1, Handbook, at 18, 29.

Greenfield was employed by ABCM as a Registered Nurse (RN) at ABCM's Southfield Wellness Community, in Webster City, Iowa. Ex. 2, Decl. of Tammy Greenfield, ¶ 3. Her primary responsibilities included providing patient care, charting patients' histories, and assisting doctors and care staff. Ex. 1 ¶ 4. Greenfield was subject to ABCM's automatic 30-minute meal deduction regardless of whether she actually received a *bona fide* meal break or not. *Id.* at ¶ 8.

Bruns was employed by ABCM as a Licensed Practical Nurse (LPN) at their Manor House facility in Sigourney, Iowa. Ex. 3, Decl. of Kathleen Bruns, ¶ 3. Her primary responsibilities included patient care and assisting other patient care staff. *Id.* ¶ 4. Like Greenfield, Bruns was subject to ABCM's automatic 30-minute meal deduction period regardless of whether she actually received a *bona fide* meal break or not. *Id.* at ¶ 8.

In fact, all Putative Class Members were subject to the same automatic meal break deduction regardless of job title or duties. For example:

---

[6] https://www.abcmcorp.com/employment/module/joblist (last visited June 21, 2023).

- Kelly Gravel was employed by ABCM as a Certified Nursing Assistant (CNA) at its Cherry Ridge Independent & Assisted Living facility in Mount Vernon, Iowa. Ex. 4, Decl. of Kelley Gravel, ¶ 3. Her responsibilities included assisting and monitoring residents. *Id.* ¶ 4. She received an automatic 30-minute meal deduction regardless of if she received a *bona fide* meal break or not. *Id.* at ¶ 8.

- Tiffany Hale was employed by ABCM as a CNA at their Manor House Facility in Sigourney, Iowa. Ex. 5, Decl. of Tiffany Hale, ¶ 3. Her responsibilities included assisting and monitoring residents. *Id.* ¶ 4. She received an automatic 30-minute meal deduction regardless of if she received a *bona fide* meal break or not. *Id.* at ¶ 8.

- Jennifer Schuttler was employed by ABCM at its Nora Springs Care Center facility in Nora Springs, Iowa as an LPN. Ex. 6, Decl. of Jennifer Schuttler ¶ 3. Her primary responsibilities included patient care and assisting other patient care staff. *Id.* ¶ 4. She received an automatic 30-minute meal deduction regardless of if she received a *bona fide* meal break or not. *Id.* at ¶ 8.

- Jordan Tipps was employed by ABCM as a CNA at ABCM's Morning Sun Care Center in Morning Sun, Iowa. Ex. 7, Decl. of Jordan Tipps, ¶ 3. Her responsibilities included assisting and monitoring residents. *Id.* ¶ 4. She received an automatic 30-minute meal deduction regardless of if she received a *bona fide* meal break or not. *Id.* at ¶ 8.

- Marcia Clubb was employed by ABCM as a CNA at its Manor House and Deerview Manor facilities in Sigourney, Iowa. Ex. 8, Decl. of Marcia Clubb, ¶ 3. Her responsibilities included assisting and monitoring residents. *Id.* ¶ 4. She received an automatic 30-minute meal deduction regardless of if she received a *bona fide* meal break or not. *Id.* at ¶ 8.

- Angel Nicholson was employed by ABCM as a CNA at its Rehabilitation Center of Hampton, in Haptom, Iowa. Ex. 9, Decl. of Angel Nicholson ¶ 3. Her responsibilities included assisting and monitoring residents. *Id.* ¶ 4. She received an automatic 30-minute meal deduction regardless of if she received a *bona fide* meal break or not. *Id.* at ¶ 8.

Plaintiffs and the Putative Class Members were also all required to follow the same ABCM policies regardless of job title, duties, or location. Ex. 2, ¶ 22; Ex. 3 ¶ 21; Ex. 4 ¶ 21; Ex. 5 ¶ 21; Ex. 6 ¶ 20; Ex. 7, ¶ 21; Ex. 8 ¶ 21; Ex. 9 ¶ 21. This included a standard hiring process run by ABCM for all employees.

**EMPLOYMENT APPLICATION**

ABCM Corporation does not discriminate against any person on the basis of race, color, religion, sex, national origin, ancestry, disability, or age in admission, treatment, or participation in its programs or activities or in privileges of employment.

PLEASE PRINT CLEARLY WHEN FILLING OUT THIS APPLICATION

NAME: Greenfield Tammy Marie DATE: 12-30-16

51524.8

c Employer's name, address, and ZIP code

ABCM Corporation
PO BOX 436

HAMPTON, IA 50441

d Control number

125530

e Employee's name, address, and ZIP code

KATHLEEN BRUNS

**SIGNATURE PAGE**

**RELATIONSHIP TO ABCM Corporation:**

**I am a: (Please check all that apply to you)**

**Direct relationships with ABCM Corporation**

☒ Employee of ABCM Corporation or an ABCM facility or program

Ex. 10, at ABCM 00017, ABCM 000266; Ex. 11, W-2s. In fact, Plaintiffs and Putative Class Members were equally subject to all ABCM policies and procedures, including its ABCM's code of conduct, various courses relating to safety in the workplace for ABCM patients, software usage policies.

| | | | | | | |
|---|---|---|---|---|---|---|
| 6624118 | Greenfield, Tammy | ABCM - Survey Preparedness - Retired 10/31/2019 | Completed | 1/26/2019 | 3/31/2019 | Online completion |
| 6624118 | Greenfield, Tammy | ABCM Code of Conduct - "The Right Way" | Completed | 1/26/2019 | 4/30/2019 | Online completion |
| 6624118 | Greenfield, Tammy | ABCM Dependent Adult Abuse and Elder Justice Act Annual Review 2017 | Completed | 2/16/2019 | 10/31/2019 | Online completion |
| 6624118 | Greenfield, Tammy | ABCM Food Safety and Sanitation - Retired | Completed | 1/5/2019 | 1/27/2019 | Online completion |

I am fully aware of the software use policies of **ABCM Corporation** and agree to uphold those policies.

Tammy Greenfield 1-16-17
(Employee signature and date)

Ex. 10, at ABCM 000184, 000272. ABCM evaluated the Plaintiffs and all of the Putative Class Members to ensure compliance with ABCM's policies and procedures:



**Merit Evaluation**

Evaluations are meant to be a positive tool used to help identify strengths and determine goals for future growth. Each employee will

Ex. 10, at ABCM 000178. During their tenure at ABCM, Plaintiffs and the Putative Class Members worked 40 hours per week on average. Ex. 2, ¶ 5; Ex. 3 ¶ 5; Ex. 4 ¶ 5; Ex. 5 ¶ 5; Ex. 6 ¶ 4; Ex. 7 ¶ 4; Ex. 8 ¶ 5; Ex. 9 ¶ 5. ABCM classified each of the Plaintiffs and Putative Class Members as non-exempt and paid them hourly. Ex. 2, ¶ 6; Ex. 3 ¶ 6; Ex. 4 ¶ 6; Ex. 5 ¶ 6; Ex. 6 ¶ 6; Ex. 7 ¶ 5; Ex. 8 ¶ 6; Ex. 9, ¶ 6. ABCM required its hourly workers to track their time via ABCM's timeclock system. Ex. 2, ¶ 7; Ex. 3 ¶ 7; Ex. 4 ¶ 7; Ex. 5 ¶ 7; Ex. 6 ¶ 7; Ex. 7 ¶ 7; Ex. 8 ¶ 7; Ex. 9, ¶ 7; Doc. 31-1 ¶ 55.

However, ABCM failed to pay the Putative Class for all hours worked. Ex. 2, ¶ 16; Ex. 3 ¶ 15; Ex. 4 ¶ 15; Ex. 5 ¶ 15; Ex. 6 ¶ 15; Ex. 7 ¶ 14; Ex. 8 ¶ 15; Ex. 9 ¶ 14. ABCM had a policy of automatically deducting 30 minutes each day from recorded work time for a "meal break," regardless of whether the putative class members actually received a 30-minute break. Ex. 2, ¶ 8-9; Ex. 3 ¶ 8-9; Ex. 4 ¶ 8-9; Ex. 5 ¶ 8-9; Ex. 6 ¶ 8-9; Ex. 7 ¶ 7-8; Ex. 8 ¶ 8-9; Ex. 8, ¶ 8-9; Doc. 31-1 ¶ 18. This policy was uniformly applied to all ABCM employees regardless of job title, job duties, or facility worked at. Ex. 2, ¶ 17; Ex. 3 ¶ 16; Ex. 4 ¶ 16; Ex. 5 ¶ 16; Ex. 6 ¶ 15; Ex. 7 ¶ 15; Ex. 8 ¶ 16; Ex. 9, ¶ 16; Doc. 31-1 ¶ 45.

ABCM's policy of patient care comes first means its workers do not get their *bona fide* meal breaks, as they are required to ensure the residents and patients are taken care of regardless of whether they are on break or not. Ex. 1, at 18 ("The care center must continue to serve the residents on a twenty-four (24) hour basis); at 8 ("We believe that nursing care should meet the physical, mental, spiritual, social and emotional needs of residents"); 30 ("We hold ourselves and all of our employees to this standard [of doing things "the Right Way"] on a daily basis"). To ensure ABCM continued to provide the "best quality of care" to its residents, Ex. 1, at 48, Plaintiffs were required to continue

their duties throughout their shift, even if they were on a break. Ex. 2, at ¶ 13 Ex. 3 ¶ 13; Ex. 4 ¶ 13; Ex. 5 ¶ 13; Ex. 6 ¶ 13; Ex. 7 ¶ 13; Ex. 8 ¶ 13; Ex. 9 ¶ 13. In fact, they would be paged through the breakroom phone to return to their duties. Ex. 2, at ¶ 23, Ex. 3, at ¶ 22. This would include their regular duties and if they were getting a call back from a doctor's office or a family member. Ex. 2, at ¶ 24. They would be pulled off break to assist other patient care professionals. Ex. 4, at ¶ 23.

On most days, the Putative Class Members worked through all or some of their meal breaks. Ex. 2, ¶ 9; Ex. 3 ¶ 9; Ex. 4 ¶ 9; Ex. 5 ¶ 9; Ex. 6 ¶ 9; Ex. 7 ¶ 9; Ex. 8 ¶ 9; Ex. 9 ¶ 9. However, ABCM required them to remain "on duty" during that time, despite the interruptions during their break. Ex. 2, ¶ 11, 13; Ex. 3 ¶ 11, 13; Ex. 4 ¶ 11, 13; Ex. 5 ¶ 11, 13; Ex. 6 ¶ 10, 12; Ex. 7 ¶ 11, 13; Ex. 8 ¶ 11, 13, Ex. 9, ¶ 11, 13; Doc. 31-1 ¶ 8. During that time, Plaintiffs and Putative Class Members engaged in work consistent with their regular patient care duties. Ex. 2, ¶ 15, 25; Ex. 3 ¶ 14, 23; Ex. 4 ¶ 14, 23; Ex. 5 ¶ 14, 23; Ex. 6 ¶ 14, 22; Ex. 7 ¶ 14, 22 Ex. 8 ¶ 14, 22; Ex. 9, ¶ 14, 22; Doc. 31-1 ¶ 61. As a result, Plaintiffs and Putative Class Members were not paid for all hours worked, including hours worked in excess of 40 each workweek. Ex. 2, ¶ 27; Ex. 3 ¶ 25; Ex. 4 ¶ 25; Ex. 5 ¶ 25; Ex. 6 ¶ 24; Ex. 7 ¶ 24 Ex. 8 ¶ 24; Ex. 9, ¶ 24; Doc. 31-1 ¶ 67.

**3. Conditional certification should be granted, and notice should be authorized because the class is "similarly situated."**

**A. Purpose and Benefits of Conditional Certification.**

The FLSA allows employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions benefit employees through pooling resources and lowering individual costs. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). They also benefit the judicial system through "efficient resolution in a single proceeding of common issues of law and fact arising from the same alleged activity." *Id.* "When class certification is appropriate, the court has discretion to facilitate notice to potential plaintiffs of the collective action." *Ferguson v. Exide Techs.,* No. C18-2044-LTS, 2019 WL 1493711, at

*2 (N.D. Iowa Jan. 31, 2019) (Strand, J.) (citing *Hoffmann-La Roche*, 493 U.S. at 169). Notice is necessary because "[c]lass members must opt in to be considered parties of a collective action under the FLSA." *Id.* (citing *Bouaphakeo v. Tyson Foods, Inc.,* 564 F. Supp. 2d 870, 890 (N.D. Iowa 2008)). Thus, the "burden at this stage is lenient." *Id.*

**B. Legal Standard.**

"This court has previously followed a two-step approach to determine whether class certification is appropriate." *Id.* (citing *Bouaphakeo,* 564 F. Supp. 2d at 890–91). "At the notice stage, the plaintiffs need merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Id.* (cleaned up). "The plaintiff's burden at this stage is lenient and 'does not require existing plaintiffs to show that members of the conditionally certified class are actually similarly situated.'" *Id.* (quoting *Bouaphakeo*, 564 F. Supp. 2d at 892). "[P]laintiffs must present more than mere allegations; i.e., some evidence to support the allegations is required." *Id.* But a modest factual showing that the Putative Class Members together were victims of a common policy or plan that violated the law is enough. *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007) (citing *Realite v. Ark Restaurants Corp.*, 7 F.Supp.2d 303, 306 (S.D. N.Y. 1998)). "The supporting evidence should show that other similarly situated individuals wish to opt in, because others' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants." *Ferguson,* 2019 WL 1493711, at *2 (cleaned up). "Other factors include 'whether affidavits of potential plaintiffs have been submitted, whether there is evidence of a widespread discriminatory plan, and whether, as a matter of sound management, a manageable class exists.'" *Id.* (quoting *Bouaphakeo*, 564 F. Supp. 2d at 892). "Essentially, the plaintiffs' burden at this first step 'requires nothing more than substantial allegations' that the putative class members were 'victims of a single decision, policy or plan.'" *Id.*

Courts should not make credibility determinations or findings of fact at this notice stage. *Tegtmeier v. PJ Iowa*, L.C., 208 F. Supp. 3d 1012, 1019 (S.D. Iowa 2016). Plaintiffs "need only establish a colorable basis for [a] claim that the putative class members were together the victims of a single decision, policy, or plan." *Polzin v. Schreiber Foods, Inc.*, No. 10-1117-CV-SW-GAF, Doc. 92, at *5 (W.D. Mo. Aug. 15, 2011). Any doubts in the notice stage should favor allowing conditional certification. *Id.* The "lenient standard generally results in conditional certification of a representative class." *Id.* at *4.

### C. A class should be conditionally certified when they are subject to the same pay practice.

Uniformity of an illegal policy or pay practice justifies conditional certification. *See e.g., Klapatch v. BHI Energy I Power Servs., Inc.*, No. 1:18-cv-11581, 2019 WL 859044, at *1 (D. Mass. Feb. 22, 2019) (conditionally certifying a nationwide class of straight time for overtime workers regardless of job title or job duties and rejecting the employer's argument that the court need to engage in an individual analysis of the employees' respective job duties as premature at the notice stage); *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1083-84 (D. Minn. 2014) (common injury of the same pay plan nationwide is sufficient for class certification); *Croft v. Protomotive, Inc.*, No. 3:12-CV-03102, 2013 WL 1976115, at *2 (W.D. Ark. May 13, 2013) ("At this stage of litigation, whether Plaintiffs are similarly situated to the proposed class turns on whether they were all subject to a common policy or practice of failing to pay for time worked"). As one court conditionally certifying a nationwide class of employees said:

> [P]urported dissimilarities between members of [the] proposed class are irrelevant because of **common scheme or policy alleged affects all hourly employees** paid straight time for overtime. In sum, the alleged FLSA violations in this case do not turn on the nature of the work performed…**Because Plaintiff alleges that the compensation scheme is in of itself a violation of the FLSA, no further factual inquiry into the job duties of each putative class member is necessary.** As such, liability can be determined collectively without limiting the class to a specific job position.

*Kilmon v. Saulsbury Industries, Inc.*, No. 7:17-cv-00099, 2017 WL 7052328, Doc. 45, at *5 (W.D. Tex. Dec. 13, 2017) (emphasis added); *see also Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, at 367-68 (D. Me. 2010) ("Prudential, with some exceptions, would not approve payment of overtime and in

fact did not pay employees for overtime work they performed; that by instituting company-wide metrics for performance, Prudential knowingly created a situation where disability claims handlers would likely work extra hours and in fact did; and that Prudential managers…suffered or permitted them to do so."); *Norceide v. Cambridge Health All.*, 814 F. Supp. 2d 17, 29 (D. Mass. 2011) (conditionally certifying class of workers who claimed they were not compensated for time worked during meal break or before/after their shifts pursuant to a uniform informal policy which discouraged employees from reporting the full time they worked).

### D. The Putative Class satisfies the lenient standard required to issue notice.

Here, Plaintiffs allege ABCM's policy of automatically deducting a 30-minute meal break regardless of whether its employees had a *bona fide* break violates the FLSA. The question at this conditional certification stage is thus whether Plaintiffs and the Putative Class Members were all uniformly subject to that policy. The evidence shows ABCM's violative policy was applied uniformly regardless of any differences in job title, duties, or location. Ex. 2 ¶ 8; Ex. 3 ¶ 8; Ex. 4 ¶ 8; Ex. 5 ¶ 8; Ex. 6 ¶ 8; Ex. 7 ¶ 8; Ex. 8 ¶ 8; Ex. 9 ¶ 8.As such, the Plaintiffs and Putative Class Members are similarly situated, and this Court should thus authorize notice to the Putative Class and allow the Notice & Consent forms attached as Exhibit 14 to be sent to the Putative Class.

Indeed, Plaintiffs present substantial allegations supported by evidence showing they and the Putative Class are similarly situated because:

- All Putative Class Members worked for ABCM. Ex. 2 ¶ 3; Ex. 3 ¶ 3; Ex. 4 ¶ 3; Ex. 5 ¶ 3; Ex. 6 ¶ 3; Ex. 7 ¶ 3; Ex. 8 ¶ 3; Ex. 9 ¶ 3; Doc. 31-1, at ¶¶ 2, 3, 23, 44-46;
- All Putative Class Members were classified as non-exempt. Ex. 2 ¶ 6; Ex. 3 ¶ 6; Ex. 4 ¶ 6; Ex. 5 ¶ 6; Ex. 6 ¶ 6; Ex. 7 ¶ 6; Ex. 8 ¶ 6; Ex. 9 ¶ 6; Doc. 31-1, at ¶¶ 18, 45;
- All Putative Class Members worked on average 40 hours a week. Ex. 2 ¶ 5; Ex. 3 ¶ 5; Ex. 4 ¶ 5; Ex. 5 ¶ 5; Ex. 6 ¶ 5; Ex. 7 ¶ 5; Ex. 8 ¶ 5; Ex. 9 ¶ 5; Doc. 31-1, at ¶¶ 4, 42, 72;

- All Putative Class regularly worked in excess of 40 hours per week. Ex. 2 ¶ 26; Ex. 3 ¶ 24; Ex. 4 ¶ 24; Ex. 5 ¶ 24; Ex. 6 ¶ 23; Ex. 7 ¶ 23; Ex. 8 ¶ 23; Ex. 9 ¶ 23; Doc. 31-1, at ¶¶ 42, 72, 73.

- All Putative Class Members recorded their time by ABCM's timeclock system. Ex. 2, ¶ 7; Ex. 3 ¶ 7; Ex. 4 ¶ 7; Ex. 5 ¶ 7; Ex. 6 ¶ 7; Ex. 7 ¶ 7; Ex. 8 ¶ 7; Ex. 9, ¶ 7; Doc. 31-1 ¶ 55;

- ABCM deducted 30 minutes each day from all Putative Class Members' recorded work time for a "meal break" even if they didn't actually receive a 30-minute break Ex. 2, ¶ 8-9; Ex. 3 ¶ 8-9; Ex. 4 ¶ 8-9; Ex. 5 ¶ 8-9; Ex. 6 ¶ 8-9; Ex. 7 ¶ 8-9; Ex. 8 ¶ 8-9; Ex. 8, ¶ 8-9; Doc. 31-1 ¶ 18;

- All Putative Class Members worked through all or part of their "meal break" the majority of the time because they were interrupted by patients, calls from doctors' offices or family members, or other staff members. Ex. 2 ¶ 8-11, 13, 15, 23-25; Ex. 3 ¶ 8-11. 13. 14, 22 23; Ex. 4 ¶ 8-11, 13, 14; Ex. 5 ¶ 8-11, 13, 14; Ex. 6 ¶ 8-11, 13, 14; Ex. 7 ¶ 8-11, 13, 14; Ex. 8 ¶ 8-11, 13, 14; Ex. 9 ¶ 8-11, 13, 14; Doc. 31-1, at ¶¶ 8, 9, 59, 60-63, 66, 70, 75;

- None of the Putative Class Members were paid for work performed during their unpaid "meal breaks." Ex. 2 ¶ 8, 9 12, 16; Ex. 3 ¶ 8, 9, 12, 15, 18; Ex. 4 ¶ 8, 9, 12, 15, 18; Ex. 5 ¶ 8, 9, 12, 15, 18; Ex. 6 ¶ 8, 9, 12, 15, 18; Ex. 7 ¶ 8, 9, 12, 15, 18; Ex. 8 ¶ 8, 9, 12, 15, 18; Ex. 9 ¶ 8, 9, 12, 15, 18; Doc. 31-1, at ¶¶ 5-7, 52, 57, 58, 68, 71.

The pleadings, declarations, and documentation demonstrate ABCM failed to timely pay its employees' wages or their overtime compensation, in violation of the FLSA. *See generally* Ex. 1-11; Doc. 31-1. They show ABCM improperly deducted 30-minutes each day from the Plaintiffs and each Putative Class Members regardless of if they actually had a *bona fide* meal break or not. This evidence is more than sufficient to meet the lenient standard at the initial stage of conditional certification.

### 4. PLAINTIFFS' NOTICE DOCUMENTS AND NOTICE METHODS ARE APPROPRIATE.

To facilitate the notice process and preserve the rights of those who have not yet opted-in, Plaintiffs propose utilizing the attached Notice and Consent Forms. *See* Ex. 12, Notice and Consent forms. Variations of the proposed Notice and Consent Forms have been adopted by courts throughout the United States. The same is true of Plaintiff's proposed opt-in timeline. *See* Proposed Order.

### A. ABCM should be required to produce the names, addresses, e-mail addresses, and phone numbers for the notice process.

Courts routinely require the production of names, addresses, e-mail addresses, and phone numbers for the notice process. FLSA plaintiffs are "entitled to specific discovery to determine the names and addresses of the Putative Class Members." *Hoffmann-LaRoche*, 493 U.S. at 169. Indeed, such discovery is commonplace in conditional certification proceedings. *See Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM, 2021 WL 7185079, at *6 (N.D. Iowa Jan. 25, 2021) (authorizing notice via mail, e-mail, and reminder letter, also providing plaintiff last 4 digits of social security number and phone numbers in the event of returned mail); *Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 2:10-CV-04175-NKL, 2011 WL 5563444, at *2 (W.D. Mo. Nov. 15, 2011) (authorizing last four social security digits, email addresses, and phone numbers); *Middleton v. Hempstead Cnty., Arkansas*, No. 4:18-CV-4112, 2019 WL 3948106, at *4 (W.D. Ark. Aug. 21, 2019) (authorizing notice via U.S. mail and via text message). The Court here should order ABCM to produce names and contact information of the Putative Class Members so notice may be issued adequately and efficiently.

### B. The Court should authorize notice by e-mail.

E-mail notice is the rule not the exception. Courts in this District and Circuit have come to recognize the importance of email notice. *See Hussein v. Cap. Bldg. Servs. Grp., Inc.*, 152 F. Supp. 3d 1182, 1198 (D. Minn. 2015) (authorizing mail and e-mail notice and reminder notice); *Harrison v. Hog Taxi, LLC*, No. 5:19-CV-05025, 2019 WL 4280328, at *6 (W.D. Ark. Sept. 10, 2019) ("Electronic communication is commonly utilized and is an appropriate, convenient, and efficient manner of communication with potential plaintiffs in FLSA actions."); *Enger v. Thomas L. Cardella & Assocs., Inc.*, No. 20-CV-78-CJW-KEM, 2021 WL 5035045, at *5 (N.D. Iowa Jan. 26, 2021) (finding notice by mail and email is reasonable).

In fact, e-mail notice has become an accepted—and even preferred—form of notice in FLSA collective actions nationwide. Courts have reached the same conclusion: "notice by e-mail will **more**

**likely** reach potential class members than regular mail sent to the home address…." *Jaso v. Bulldog Connection Specialists LLC*, No. 2:15-CV-269, 2015 WL 11144603, at *5 (S.D. Tex. Oct. 15, 2015) (emphasis added). Issuance of notice via e-mail is crucial here as it is an accessible, low-cost option to provide the putative class members with notice. Accordingly, e-mail messaging is a superior means by which to send notice to the Putative Class Members, and the Court should authorize notice via e-mail.

**C. The Court should authorize a reminder notice.**

Plaintiffs request the Court authorize Plaintiffs' Counsel to send an identical reminder notice by mail, email, and text message half-way through the 60-day opt-in period. Courts in this District recognize reminder notices are beneficial for potential plaintiffs because they ensure that these workers are made aware of their rights. *See Enger,* 2021 WL 5035045, at *5 (authorizing reminder notice); *Friedly v. Union Bank & Tr. Co.*, No. 4:21CV3105, 2021 WL 5773680, at *6 (D. Neb. Nov. 19, 2021), *adopted*, No. 4:21-CV-3105, 2021 WL 5771278 (D. Neb. Dec. 6, 2021) ("Judges in this district have recently found that reminder notices are a reasonable and useful tool to ensure interested plaintiffs are able to timely opt-in to the litigation.") *Rhodes v. Truman Med. Ctr., Inc.*, No. 4:13-CV-00990-NKL, 2014 WL 4722285, at *5 (W.D. Mo. Sept. 23, 2014) (noting reminder notice "will help ensure that all putative Plaintiffs are provided an adequate opportunity to 'opt in' to the action.")

A reminder notice in this case would ensure that the putative class members actually receive notice and have an opportunity to make an informed decision about whether to join this case. As such, the Court should authorize reminder notice.

**D. The Court should authorize phone calls to Putative Class Members whose notice is returned undeliverable.**

Plaintiffs also request the opt-in schedule allow phone calls to certain potential plaintiffs for the limited purpose of obtaining accurate contact information if their mailed or emailed notice is

returned as undeliverable.[7] *See McDonald v. Encompass Services, LLC*, No. 16-1203-LPL, Doc. 29 (W.D. Pa. Dec. 20, 2016) (granting follow-up by telephone contact, posting of notices, email and mail delivery, and reminders). As courts have recognized, "telephone numbers … provide a more stable means of contacting a person who has moved than a mailing address." *Jaso*, 2015 WL 11144603, at *6 (citing *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 516-517 (W.D. Tex. 2015)). For this reason, Plaintiffs request the Court authorize Plaintiffs' Counsel to make follow-up telephone calls to those Putative Class Members whose contact information is shown to be incorrect or no longer valid.

## 5. CONCLUSION

Plaintiffs have satisfied the lenient standard to demonstrate the Putative Class Members were together victims of a common policy or plan (automatic meal break deduction) alleged to violate the FLSA. Thus, the Court should grant Plaintiffs' Motion and allow notice to be sent to the Putative Class Members as described herein.

Respectfully submitted,

By: */s/ Olivia R. Beale*

**Michael A. Josephson**
PA Bar No. 308410
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Olivia R. Beale**
TX Bar No. 24122166
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
obeale@mybackwages.com

**AND**

[7] Plaintiffs propose doing so utilizing a proposed script. *See*. Ex 12.

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

**Mark D. Sherinian**
AT0007173
**Melissa C. Hasso**
AT0009833
**Emily E. Wilson**
AT0013860
**SHERINIAN & HASSO LAW FIRM**
111 E. Grand Ave., Suite 212
Des Moines, IA 50309
Tel: (515) 224-2079
Fax: (515) 224-2321
sherinianlaw@msn.com
mhasso@sherinianlaw.com
ewilson@sherinianlaw.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF AND PUTATIVE CLASS MEMBERS**

## CERTIFICATE OF CONFERENCE

I hereby certify that prior to filing the instant Motion, I conferred with Counsel for Defendant. Counsel for Defendant indicated Defendant is opposed to the relief sought herein, necessitating the filing of the instant Motion.

*/s/ Olivia R. Beale*
**Olivia R. Beale**

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document on all parties and/or their counsel of record via this Court's ECF electronic filing system on June 23, 2023, in accordance with the Federal Rules of Civil Procedure.

*/s/ Olivia R. Beale*
**Olivia R. Beale**